T.C. Memo. 2013-158

UNITED STATES TAX COURT

YAKOV KOBEL AND ANNA BERKOVICH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5079-10.                    Filed June 27, 2013.

Yakov Kobel and Anna Berkovich, pro sese.

<u>John D. Davis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies in petitioners'

Federal income tax of $12,408 and $53,030 for 2003 and 2006, respectively, and

**[\*2]** accuracy-related penalties under section 6662(a)[1] of $2,482 and $10,606 for

2003 and 2006, respectively.  After concessions,[2] the issues for decision are:  (1)

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts have been rounded to the nearest dollar.

[2]The parties stipulated that for 2003 petitioners are liable for a deficiency in Federal income tax of $242 and are not liable for an accuracy-related penalty under sec. 6662(a).  The parties further stipulated that for 2006 petitioners are entitled to (1) business expense deductions incurred by Mission Trucking of $39,534 and (2) itemized deductions (subject to statutory limitations) of $58,681.  The parties represented to the Court at trial that these are the only deductions to which petitioners are entitled for 2006.  On brief, however, petitioners contend that they are entitled to additional deductions for 2006.  Stipulations are generally treated as conclusive admissions.  See Rule 91(e).  We may disregard stipulations where justice so requires if the evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to the facts disclosed by the record.  See Loftin & Woodward, Inc. v. United States, 577 F.2d 1206, 1232 (5th Cir. 1978); Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989); Jasionowski v. Commissioner, 66 T.C. 312, 317-318 (1976).  Petitioners, however, have not produced any credible evidence showing that these stipulations are erroneous.  Accordingly, we will not disregard the stipulations.

Respondent concedes that for 2006 $55,140 of the deposits into petitioners' bank accounts was nontaxable.  Included in this amount are $24,200 that respondent concedes petitioners borrowed from Oresiya Gurzy and $1,500 that respondent concedes petitioners borrowed from Vasiliy Kobel.  Respondent further concedes that in calculating petitioners' deficiency he erroneously included $38,000 of petitioners' income reported on Schedule E, Supplemental Income and Loss, which he had twice reclassified as income reported on Schedule C, Profit or Loss From Business, in the notice of deficiency.  These concessions total $93,140 and are the concessions to which respondent refers in his opening brief.

(continued...)

[*3] whether petitioners had unreported income of $69,592 for 2006; and (2) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2006.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioners, who are married, resided in Oregon when they petitioned this Court.

I.     Mission Trucking

In 2000 Yakov Kobel started a trucking business named Mission Trucking, which during 2006 he treated as an unincorporated business.[3] Mission Trucking rented trucks to individuals. Mission Trucking also charged fees for training

---

[2](...continued)
As discussed infra, respondent determined that $162,732 in unreported, taxable deposits was deposited into petitioners' bank accounts. Thus, after respondent's concession of $93,140, $69,592 remains at issue.

[3]Although the parties stipulated that Mission Trucking was an incorporated entity, petitioners have not argued that Mission Trucking operated as a separate taxable entity or that it reported its income and expenses on separately filed returns. Moreover, petitioners reported Mission Trucking's income and expenses on Schedule E of their joint 2006 Form 1040, U.S. Individual Income Tax Return (2006 return), which respondent reclassified as Schedule C income and expenses in the notice of deficiency. Accordingly, we find that for 2006 petitioners treated Mission Trucking as an unincorporated business, and we disregard the stipulation as inconsistent with the preponderance of credible evidence in the record. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. at 195.

[*4] prospective applicants for commercial driver's license (CDL) tests in its trucks.

The Immigrant & Refugee Community Organization (IRCO) is an organization that assists and provides resources to immigrants and refugees new to the United States. IRCO oversees an employment support program (IRCO employment program). The purpose of this program is to help new immigrants obtain employment.

During the years at issue Mission Trucking rented trucks to individuals enrolled in the IRCO employment program. Mission Trucking provided receipts to IRCO and received payments from IRCO. IRCO made at least 19 payments by check to Mission Trucking and/or Mr. Kobel during 2006, including 12 payments of $300 each and 7 payments of $250 each. The memo line on many of the IRCO checks states that the checks were for "CDL training" for various persons.

As of December 2005 Mr. Kobel owned three vehicles. During 2006 Mission Trucking had a checking account with an account number ending in 1003 (Mission Trucking account) with U.S. Bank.

[*5] II.     Ms. Berkovich's Childcare Business

During 2006 Anna Berkovich ran a childcare business.  Ms. Berkovich had her own bank account with an account number ending in 4068 (Ms. Berkovich's account) with Bank of the West.

III.     Petitioners' Real Estate Activities

During 2006 Mr. Kobel began building two homes.  On March 16, 2007, petitioners sold the property at 2659 SE 136th Avenue in Portland, Oregon (136th Avenue property).  The final settlement statement issued to Ms. Berkovich, who is listed as the seller, states that the following payments, among others, were made at closing:

| Payee | Amount |
| --- | --- |
| Oresiya Gurzy | $11,250 |
| Alena Fabrenchuk | 9,600 |
| Anna Berkovich | 11,450 |
| Violeta Koval | 2,000 |
| Yana Berkovich | 7,500 |
| Konstantin Berkovich | 500 |
| Lena Romenska | 1,100 |
| Mariya Ziryada | 6,000 |
| David Sheshelnitsky | 7,500 |

IV.     Petitioners' Tax Reporting

On their 2006 return petitioners reported gross income of $11,995.

Petitioners reported gross receipts of $8,000 and net profit of $8,000 from Ms.

[*6] Berkovich's childcare business on a Schedule C attached to their 2006 return. Petitioners reported rents received of $38,000, total expenses of $36,200, and total rental income of $1,800 from Mr. Kobel's truck rental business on a Schedule E attached to their 2006. Petitioners reported gross income of $5,000, farm expenses of $2,030, and net farm profit of $2,970 on a Schedule F, Profit or Loss From Farming, attached to their 2006 return.

## V. Respondent's Bank Deposits Analysis

Respondent conducted an analysis of the deposits into the Mission Trucking account and Ms. Berkovich's account. Respondent's bank deposits analysis showed that (1) $151,564 in taxable deposits, including $72,125 in cash, was deposited into the Mission Trucking account and (2) $11,168 in taxable deposits, including $6,410 in cash, was deposited into Ms. Berkovich's account.[4]

---

[4]The copy of respondent's bank deposits analysis that is in the record indicates that $11,168.98 was deposited into Ms. Berkovich's account. However, the parties stipulated that $11,168 was deposited into the account. We find in accordance with the stipulation.

**[\*7]**                                   OPINION

I.      Unreported Schedule C Income

    A.      Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, if a taxpayer produces credible evidence[5] with respect to any factual issue relevant to ascertaining the taxpayer's liability for any tax imposed by subtitle A or B of the Code and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner.  Sec. 7491(a)(1).  Section 7491(a)(2) requires a taxpayer to demonstrate that he or she (1) complied with requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) cooperated with reasonable requests by the Secretary[6] for witnesses, information, documents,

---

[5]"'Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness).'"  Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

[6]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

[*8] meetings, and interviews.  See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has held that for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish some evidentiary foundation connecting the taxpayer with the income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the unreported income adjustment was arbitrary or erroneous.  See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

Petitioners operated and earned income from two businesses during 2006, Mission Trucking and Ms. Berkovich's childcare business; and respondent's bank deposits analysis shows that petitioners received income that they did not report on their 2006 return.  Respondent therefore introduced evidence that petitioners

**[\*9]** had income-producing activities during 2006, see Weimerskirch v. Commissioner, 596 F.2d at 361-362, and that petitioners actually received unreported income, see Edwards v. Commissioner, 680 F.2d at 1270-1271. Accordingly, petitioners bear the burden of proving that respondent's determination is incorrect, unless they demonstrate that the burden of proof should shift to respondent under section 7491(a). However, the record shows that petitioners did not meet the requirements of section 7491(a)(2). Accordingly, the burden of proof remains on them.

### B. Bank Deposits Method

Gross income includes "all income from whatever source derived". Sec. 61(a). A taxpayer must maintain books and records establishing the amount of his or her gross income. Sec. 6001. If a taxpayer fails to maintain and produce the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); sec. 1.446-1(b)(1), Income Tax Regs. The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

**[\*10]** Petitioners failed to produce business records for Mission Trucking and Ms. Berkovich's childcare business. Accordingly, respondent did not err in reconstructing petitioners' income.

The bank deposits method is a permissible method of reconstructing income. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); see also Kudo v. Commissioner, T.C. Memo. 1998-404, 76 T.C.M. (CCH) 817, 829 (1998), aff'd, 11 Fed. Appx. 864 (9th Cir. 2001). Bank deposits constitute prima facie evidence of income. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The Commissioner need not show the likely source of a deposit treated as income, but the Commissioner "must take into account any nontaxable source or deductible expense of which * * * [he] has knowledge" in reconstructing income using the bank deposits method. Clayton v. Commissioner, 102 T.C. at 645-646. However, the Commissioner need not follow any "leads" suggesting that a taxpayer has deductible expenses. DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the bank deposits analysis is unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. at 645; DiLeo v. Commissioner, 96 T.C. at 883. The taxpayer must prove

[*11] that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable.  See Clayton v. Commissioner, 102 T.C. at 645.

### C.    Whether Respondent's Bank Deposits Analysis Is Inaccurate

Petitioners contend that respondent's bank deposits analysis is inaccurate because it includes in petitioners' income amounts that Mr. Kobel borrowed to build a home on the 136th Avenue property in 2006.

#### 1.    Petitioners' Witnesses

##### a.    Vickie Sjoblom

Vickie Sjoblom, an employee of Lawyer's Title Co., testified that it was her understanding at the time that the amounts listed in the final settlement statement for the sale of the home on the 136th Avenue property in 2007 were for the repayment of amounts that petitioners had borrowed from private parties or for various construction costs.  But Ms. Sjoblom also testified that she followed Ms. Berkovich's written instructions and that she did not know which payments were for loans and which payments were for construction costs.

##### b.    Mr. Kobel

Mr. Kobel testified that various family members and friends lent him money to finance the construction of a home on the 136th Avenue property.  He

[*12] specifically testified that, in 2006, (1) Konstantin Berkovich, his brother-in-law, lent him $500; (2) Alena Fabrenchuk, his sister, lent him $9,600;[7] and (3) David Sheshelnitsky, a friend, lent him $7,500. None of these people testified at trial.

Mr. Kobel's testimony repeatedly contradicted credible evidence in the record. For example, Mr. Kobel testified that Mission Trucking did not provide CDL training services. However, Mission Trucking received multiple checks from IRCO with memo lines stating that the checks were for "CDL training" and the record generally shows that Mission Trucking provided CDL training services. Accordingly, we do not find Mr. Kobel's testimony to be credible.

### c. Violeta Koval

Violeta Koval is Mr. Kobel's younger sister. Ms. Koval was a student in 2006. Ms. Koval testified that she lent Mr. Kobel $2,000 in 2006. However, Ms. Koval signed an affidavit on October 31, 2010, stating that she lent Mr. Kobel $10,500 in 2006. At trial she could not recall (1) how much she withdrew from

---

[7]Because Ms. Fabrenchuk was needed to serve as an interpreter in this case, respondent waived his objection to an affidavit she signed on October 31, 2010, stating that she lent Mr. Kobel $9,600 in 2006. We do not, however, find Ms. Fabrenchuk's affidavit to be convincing because it contradicts Mr. Kobel's previous statements, as testified to by Special Agent James Nix, that he did not use family loans to build the home on the 136th Avenue property. See infra part I.C.2.

[*13] her bank account to lend to Mr. Kobel, (2) when she withdrew the money from her bank account, (3) how many withdrawals she made from her bank account, or (4) for what purpose Mr. Kobel needed the funds that she allegedly lent him. Accordingly, we do not find Ms. Koval's testimony to be credible.

### d.　Oresiya Gurzy

Oresiya Gurzy is Mr. Kobel's sister. Ms. Gurzy signed an affidavit on December 25, 2010, stating that she lent Mr. Kobel $24,190 in 2006. However, respondent has since conceded that Ms. Gurzy lent Mr. Kobel $24,200 in 2006.[8]

### e.　Mariya Ziryada

Mariya Ziryada is Mr. Kobel's sister. Ms. Ziryada testified that she lent him $6,000 in three installments in 2006 and that he repaid her in 2007. However, Ms. Ziryada signed an affidavit on October 25, 2010, stating that she lent Mr. Kobel $12,750 in 2006 and that he repaid her $6,000. Accordingly, we do not find Ms. Ziryada's testimony to be credible.

### f.　Lena Romenska

Lena Romenska is Mr. Kobel's sister. Ms. Romenska testified that she lent him $1,000 during July or August 2006 and that he repaid her $1,100. We do not,

---

[8]The affidavit that Ms. Gurzy signed stated that the amount of the loan was $24,190, but respondent conceded on brief that the amount was $24,200. We find in accordance with respondent's concession.

[*14] however, find Ms. Romenska's testimony to be convincing because it contradicts Mr. Kobel's previous statements, as testified to by Special Agent Nix, that he did not use family loans to build the home on the 136th Avenue property. See infra part I.C.2.

g.    Anna Kobel

Anna Kobel is Mr. Kobel's mother.  Ms. Kobel testified that she lent him $1,500 by check in 2006 and that the $1,500 was the proceeds of a tax refund. However, the only $1,500 check deposited into petitioners' checking accounts is a check dated February 2, 2006, from Anna and Vasiliy Kobel's bank account, and respondent has already conceded that Vasiliy Kobel gave or lent Mr. Kobel $1,500 in 2006.

h.    Ms. Berkovich

Ms. Berkovich testified that she borrowed $2,000 from a friend of hers, Luba Frunza, and that she gave the $2,000 to Mr. Kobel to finance the construction of the home on the 136th Avenue property.  However, Ms. Berkovich also signed an affidavit on October 31, 2010, stating that she lent $11,450 to Mr. Kobel in 2006.  Ms. Berkovich did not testify regarding the $11,450 she purportedly lent Mr. Kobel in 2006 or how she obtained such funds.  Accordingly, we do not find Ms. Berkovich's testimony to be credible.

[*15]     2.     Respondent's Witness

Special Agent Nix testified that when he first interviewed Mr. Kobel on November 2, 2007, Mr. Kobel denied receiving loans for building and selling homes. Special Agent Nix further testified that when he interviewed Mr. Kobel a second time in December 2007, Mr. Kobel said that his sisters would give him money if he needed it but that he was unsure whether they had given him any. We find Special Agent Nix's testimony to be credible. Mr. Kobel's prior statements are admissible as admissions by a party opponent. See Fed. R. Evid. 801(d)(2)(A). We therefore find that Mr. Kobel did not receive loans from family members or friends in 2006 in amounts greater than respondent allowed.

D.     Reported Income Erroneously Included

As noted, petitioners reported gross income of $5,000 on a Schedule F attached to their 2006 return. The unreported income adjustment in the notice of deficiency fails to account for this reported amount.[9] We therefore find that respondent failed to adjust his calculation of petitioners' unreported Schedule C income to take into account $5,000 of income that petitioners reported on Schedule F.

_____

[9]Although respondent represented at trial that he would address this issue on brief, he failed to do so. See Rules 123(a) and (b), 151(e)(5); Lunsford v. Commissioner, 117 T.C. 183, 187 n.6 (2001).

[*16] II.    Accuracy-Related Penalty Under Section 6662(a)

Section 6662(a) and (b)(1) and (2) authorizes the Commissioner to impose a 20% penalty on an underpayment of tax that is attributable to, among other things, (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax.  Only one section 6662 accuracy-related penalty may be imposed with respect to any given portion of an underpayment.  New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs.

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs.  "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs.  Disregard of rules or regulations "is 'careless' if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position" and "is 'reckless' if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe."  Sec. 1.6662-3(b)(2), Income Tax Regs.; see

[*17] also Neely v. Commissioner, 85 T.C. 934, 947 (1985). An understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement of income tax is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows that there was reasonable cause and that he or she acted in good faith. Sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c);

[*18] <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.  Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had reasonable cause or substantial authority for the position.  See <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

We have found that petitioners failed to report some of their income on their 2006 Federal income tax return.  The evidence shows that the resulting underpayment of petitioners' Federal income tax is the product of petitioners' negligence and disregard of rules and regulations.  Respondent has therefore met his burden of producing evidence showing that a section 6662(a) penalty for an underpayment of tax attributable to negligence or disregard of rules or regulations is appropriate with respect to the portion of the underpayment resulting from petitioners' unreported income.  However, respondent has not produced any evidence showing that petitioners were negligent in claiming deductions greater than the amounts stipulated by the parties.  See <u>Barrett v. United States</u>, 561 F.3d 1140, 1147 & n.7, 1148 (10th Cir. 2009) (stipulation of unreported income failed to satisfy Commissioner's burden of production with respect to negligence penalty under section 6662(a)).  Indeed, because the parties resolved the deduction issues by stipulation, none of petitioners' records with respect to the claimed deductions

**[\*19]** were introduced at trial and respondent failed to solicit testimony regarding the state of those records. Respondent even objected to testimony that Mr. Kobel offered regarding petitioners' expenses on the theory that the testimony was irrelevant because the deduction issues were fully resolved by stipulation. Respondent has, therefore, not met his burden of producing evidence showing that a section 6662(a) penalty for an underpayment of tax attributable to negligence or disregard of rules or regulations is appropriate with respect to the portion of the underpayment resulting from petitioners' erroneously claimed deductions.

Petitioners contend that they acted with reasonable cause and in good faith with respect to the underpayment attributable to their failure to accurately report their income because they relied on an experienced tax return preparer. Reliance on a tax professional demonstrates reasonable cause when (1) a taxpayer selects a competent tax adviser, (2) supplies the adviser with all relevant information, and (3) relies in good faith on the adviser's professional judgment. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Petitioners have not produced any credible evidence showing that they (1) selected a competent tax return preparer or (2) supplied accurate information to their tax return preparer. Accordingly, petitioners are liable for a section 6662(a) penalty for an underpayment of tax attributable to negligence or disregard of rules

**[\*20]** or regulations with respect to the portion of the underpayment attributable to their unreported income.  See id.

Alternatively, to the extent that the Rule 155 computations show that the understatement of income tax exceeds the greater of 10% of the tax required to be shown on the return or $5,000, see sec. 6662(d)(1)(A), respondent has met his burden of producing evidence showing that a section 6662(a) penalty for an underpayment of tax attributable to a substantial understatement of income tax is appropriate.  Petitioners have not produced any credible evidence that they acted with reasonable cause and in good faith with respect to the underpayment. Accordingly, petitioners would then be liable for a section 6662(a) penalty for an underpayment of tax attributable to a substantial understatement of income tax. However, as noted, petitioners will be liable for only one section 6662(a) penalty with respect to any portion of the underpayment of tax.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.